IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REBECCA TORRES-DELGADO (03),<br><br>Defendant. | Case No. 21-20004-03-DDC |

## MEMORANDUM AND ORDER

This Order decides whether defendant possessed a firearm in connection with her criminal offense, in the sense that § 4C1.1 of the United States Sentencing Guidelines uses those words. Ms. Torres-Delgado claims she didn't. The government agrees. And after study, so does the court. This conclusion means that defendant qualifies for retroactive application of the recently amended § 4C1.1 of U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2024)—a provision that applies to "Zero-Point Offenders." It also means Ms. Torres-Delgado is eligible for a reduced custody sentence.

This Order articulates the court's reasoning for these conclusions.

### Background

Ms. Torres-Delgado pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine, a violation of Title 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii). Doc. 208 at 1. The court sentenced her in April 2023—some six months before the Sentencing Commission's Amendment 821 modified § 4C1.1 of the Guidelines. Expressed in general terms, this amended provision reduced the offense level of certain offenders who had received zero criminal history points. Ms. Torres-Delgado's motion correctly asserts she received zero points, so the court, retroactively, should give her the benefit

of the amended § 4C1.1.  The court organizes its analysis of Ms. Torres-Delgado's request into three parts:  identifying the court's authority to modify a term of imprisonment; applying that authority to the facts of Ms. Torres-Delgado's case; and evaluating the § 3553(a) factors before reducing her sentence.

## Analysis

*First*, as a general proposition, federal courts "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c)(1).  There are exceptions, though, and they all come from federal statutes.  *Dillon v. United States*, 560 U.S. 817, 819 (2010); *see also United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997) (court may modify sentence "only pursuant to statutory authorization") (citing *United States v. Blackwell*, 81 F.3d 945, 947–48, 949 (10th Cir. 1996)).  Section 3582(c)(2) provides one exception and it supplies all the authority needed here.  As pertinent, § 3582(c)(2) permits a federal court to modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range" subsequently "lowered by the Sentencing Commission[.]"  *Id.*

*Second*, does Ms. Torres-Delgado's case qualify for this exception in § 3582(c)?  The answer turns on a second question:  Has the Sentencing Commission lowered her "sentencing range" since the court sentenced her in April 2023?  And the answer to that question, in turn, hinges on the answer to a third:  Is Ms. Torres-Delgado a zero-point offender under § 4C1.1?

The answer seems evident.  Section 4C1.1(a) applies when a "defendant did not receive any criminal history points."  *Id.*  Ms. Torres-Delgado received no criminal history points, Doc. 198 at 32, so, it would seem, her total offense level should decrease by two levels.  But there's more to it, as the rest of § 4C1.1(a) demonstrates.  It establishes 10 disqualifiers—conditions that disqualify a zero-point offender from receiving the two-level reduction.  *See* § 4C1.1(a)(2) –

(a)(11) (describing 10 circumstances negating eligibility for the two-level reduction). One disqualifier potentially applies here: subsection (a)(7). It disqualifies a defendant from receiving the two-level reduction if she "possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense." § 4C1.1(a)(7) (verb tense cleaned up). Both the government and Ms. Torres-Delgado conclude that she didn't commit any of the disqualifying predicates in subsection (a)(7) or any of the other disqualifying acts in subsection (a). And both parties direct the analysis to our Circuit's decision in *United States v. Zavalza-Rodriguez*, 379 F.3d 1182 (10th Cir. 2004).[1]

In that case, defendant stipulated that Guidelines § 2D1.1(b)(1)'s enhancement applied because—in the words of that Guideline—a firearm "was possessed." *Id.* at 1184. The district court held that defendant's stipulation to § 2D1.1's gun enhancement didn't necessarily exclude him from qualifying for the safety valve provision in Guideline § 5C1.2—a conclusion that couldn't stand if "defendant . . . [had] possessed a firearm or other dangerous weapon . . . in connection with the offense." § 5C1.2(a)(2) (verb tense cleaned up). And the Circuit affirmed, concluding defendant qualified for the safety valve provision. *Zavalza-Rodriguez*, 379 F.3d at 1188. Any apparent incongruity was not contradictory at all, the Circuit reasoned, because § 2D1.1(b)(1) and § 5C1.2(a)(2) apply two distinct kinds of possession. *Id.* Section 2D1.1's enhancement—as indicated by that provision's use of the passive voice—does not require that defendant *personally* possessed a firearm. The Court of Appeals explained, a "§ 2D1.1(b)(1) sentence enhancement applies to a defendant for a co-conspirator's possessing a weapon[.]" *Id.* at 1186. In contrast, the active voice language used in the safety valve provision (§ 5C1.2(a)(2))

---

[1] *See* Doc. 224 at 7 ("Defendant's Motion to Reduce Sentence Under 18 U.S.C. 3582(c)(2)") and Doc. 227 at 4 (government's Response).

"require[s] active possession . . . [so] a closer degree of connection . . . to preclude application of the safety valve[.]" *Id.* at 1187. And so, the Tenth Circuit held, the district court had not erred by finding defendant qualified for the safety valve even though § 2D1.1(b)(1)'s gun enhancement applied to him.[2]

Ms. Torres-Delgado argues that *Zavalza-Rodriguez* closely informs the correct analysis here. Doc. 224 at 6–7. She notes that the zero-point gun disqualifier (§ 4C1.1(a)(7)) uses the same active voice as the safely valve's disqualifier (§ 5C1.1(a)(2)). *Id.* at 8. More specifically, a defendant can't qualify for the zero-point reduction if *she* has "possess[ed]" a gun—just as a defendant can't qualify for the safety valve provision if "*the defendant*" has possessed a gun. But if a defendant didn't possess a firearm *personally*, the § 4C1.1(a)(7) analysis shifts accordingly. Or, saying it another way, the zero-point offender provision doesn't disqualify Ms. Torres-Delgado from its benefits even though she properly received the firearm enhancement under § 2D1.1(b)(1). The government agrees with defendant's reasoning, at least in this defendant's factual context, Doc. 227 at 5, and so does the court.[3]

---

[2] *See also Zavalza-Rodriguez*, 379 F.3d at 1186, first citing *In re Sealed Case* (*Sentencing Guidelines "Safety Valve"*), 105 F.3d 1460, 1462–63 (D.C. Cir. 1997) (a "co-defendant's possession of a weapon does not preclude application of the safety valve and noting the difference between the passive voice 'was possessed' in § 2D1.1(b)(1) and the active voice requiring the defendant to do the possessing in § 5C1.2(a)(2)"), then citing *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997) (similar reasoning).

[3] The factual setting matters. For instance, the parties' reasoning wouldn't apply where a defendant's § 2D1.1(b)(1)'s enhancement resulted from defendant's personal possession of a gun. But that's not a concern here. At sentencing, the court found that defendant qualified for the gun enhancement in § 2D1.1(b)(1) based on her co-conspirator's possession of a weapon. *See* Doc. 209 at 1 (Statement of Reasons) (ruling that Presentence Investigation Report properly applied this enhancement "based upon [defendant's] co-conspirator's possession of a weapon, which was within the scope of her jointly undertaken criminal activity and [thus] part of her relevant conduct.") (Statement of Reasons). The court's distinction continued, explaining that "there was not enough evidence to show the defendant *herself* possessed a weapon. [Ms. Torres-Delgado] thus remained safety valve eligible." *Id.* (emphasis added) (explaining reasoning for overruling defendant's objections to Presentence Investigation Report) (Statement of Reasons).

In sum, the court holds that Ms. Torres-Delgado qualifies for the zero-point offender reduction in § 4C1.1(a)(7). She personally did not possess a weapon. This conclusion means, in turn, that the amendment adopted in Amendment 821 reduced defendant's "sentencing range." It also means that Ms. Torres-Delgado qualifies for the exception in § 3582(c)(2), *i.e.*, she was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commision[.]" *Id.*

*Last*, the court's conclusion about reduced range doesn't decide the outcome of defendant's motion. The court still must evaluate Ms. Torres-Delgado under "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

Evaluating the sentencing factors in § 3553(a) holistically starts with some Guidelines math. Ms. Torres-Delgado's original Guidelines findings placed her at Total Offense Level 29/Criminal History Category I, producing a sentencing range of 87 to 108 months. Reducing those findings by the two levels subtracted under § 4C1.1, her new Guidelines findings are 27/I. That means her sentencing range reduces to 70 to 87 months. Originally, the court sentenced defendant to 60 months—about 31% below the bottom rung of her Guidelines range. A corresponding reduction based on defendant's new findings would produce a 48 month sentence—31% below the bottom end of the range (70 months).[4]

When the court evaluates Ms. Torres-Delgado under the § 3553(a) factors at resentencing, it considers the defendant as she presents herself today—not when she committed her offense, when she was convicted, or when the court originally imposed sentence.

---

[4] The court also must find that § 4C1.1 applies retroactively. The policy statement in Guidelines § 1B1.10(a)(1), (d) decides this question, so the court needn't elaborate.

*Concepcion v. United Sates*, 597 U.S. 481, 491–501 (2022) (First Step Act permits district courts to consider intervening changes in fact when exercising sentencing discretion on sentence reduction). Ms. Torres-Delgado's filings assert she's even more deserving of a below Guidelines sentencing than she was when originally sentenced. Doc. 224 at 11–13. The government concurs. *See* Doc. 227 at 5 n.1. Still, given events pre-dating even her conviction, the court's not so sure.

  Ms. Torres-Delgado was released pending trial after the court originally had detained her pending a detention hearing. Doc. 198 (Presentence Investigation Report (PSR)). Four days later, the court released her on conditions. Doc. 198 at 5 (PSR ¶ 5). About one month later, she reappeared in court on a summons to answer to allegations that she had violated her conditions of release. *Id.* (PSR ¶ 6). At this hearing, the court found she had violated her conditions and remanded her to custody. *Id.* About five weeks later, the court ordered her released and added a new condition for inpatient treatment. *Id.* (PSR ¶ 7). Ms. Torres-Delgado couldn't abide her good fortune. Eight months later, the court again summoned her to court for a hearing about compliance with conditions. *Id.* (PSR ¶ 8). At that hearing, the court found probable cause to believe defendant had violated her release conditions. *Id.* Still, it decided to give her another chance. Some three months after getting that second chance, the court issued a third summons. *Id.* (PSR ¶ 9). On July 6, 2022, the court found she again had violated her conditions of bond and ordered her detained pending trial. *Id.* She remained detained until she pleaded guilty in mid-January 2023, and has remained in custody since. In sum, defendant's conduct on release doesn't suggest she had abandoned her lawless ways.

  The court's mindful that it found Ms. Torres-Delgado nonetheless deserving of a below Guidelines sentence at her original sentencing. But it also must consider whether a similarly

reduced sentence now—one based on her new Guidelines findings—will produce a sentence that still is sufficient.  In other words, the sentencing decision isn't, at bottom, a math problem.

Defendant has mustered some showing that she's a better person than she was at her original sentencing and, perhaps during her bungled pretrial release.  The court hopes so.  But to be direct, the court has misgivings about a sentence that dips all the way to 48 months.  Is it too lenient to comport with Ms. Torres-Delgado's history and characteristics?  Will it still provide a just punishment?  Will it adequately protect the public?  While it's a closer call than the Guidelines question addressed in this Order, the court concludes that a sentence of 48 months, on balance, is sufficiently faithful to all the § 3553 factors.  The court thus reduces the custody component of defendant's sentence to 48 months in prison.  All other components of her sentence remain the same.

**IT IS THEREFORE ORDERED** that defendant Rebecca Torres-Delgado's "Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2)" (Doc. 224) is granted.

**IT IS FURTHER ORDERED** that the custody component of Ms. Torres-Delgado's sentence is reduced from 60 months to 48 months.  All other components of the sentence remain the same.  The court directs the Clerk to enter an Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2).

**IT IS SO ORDERED.**

Dated this 19th day of February, 2025, at Kansas City, Kansas.

s/ Daniel D. Crabtree<br>
**Daniel D. Crabtree**<br>
**United States District Judge**